This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports.  Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions.  Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**No. S-1-SC-37093**

**Filing Date:  May 28, 2020**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**EDWIN EDSEL ORTIZ-PARRA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Alisa A. Hart, District Judge**

Bennett J. Baur, Chief Public Defender
Gregory B. Dawkins, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Hector H. Balderas, Attorney General
John Kloss, Assistant Attorney General
Santa Fe, NM

for Appellee

**DECISION**

**VIGIL, Justice.**

**{1}** For his participation in a 2016 deadly shooting, Defendant Edwin Edsel Ortiz-Parra was convicted of and sentenced for six offenses, including two counts of first-degree murder. Defendant was tried alongside his brother Eder Ortiz-Parra and his cousin Rafael Gonzalez-Parra. Defendant appeals directly to this Court, seeking reversal of his convictions.

## I.    BACKGROUND

**{2}**    Two men were shot and killed, and two more were left wounded, when Defendant and his brother Eder burst through the front door of a house, firing their weapons. Daniel Chumacero and Juan Carlos Saenz-Ponce were killed. Jose Hernandez and Jorge Hernandez were injured in the shooting but survived. Three eyewitnesses to the incident testified at trial: Jorge, Mirna Rodriguez-Gutierrez (Daniel's girlfriend), and Carlos Almazan-Avila (Defendant's friend). The testimonial evidence tells the following story.

**{3}**    Prior to the shooting, Defendant and Eder had sought the assistance of their cousin Rafael and their friend Carlos to "go talk to some guys." The foursome took two cars to the house, with Defendant and Eder in one car and Rafael and Carlos in another. As they pulled up to the house, Daniel was backing his vehicle out of the driveway. Defendant blocked the driveway with his car, preventing Daniel from leaving. Defendant and Eder then exited their vehicle, opened the door of Daniel's vehicle, and forced Daniel out of the car before marching him into the house at gunpoint. Rafael and Carlos remained outside with Mirna, who was sitting in the passenger seat of Daniel's car.

**{4}**    Once inside the house, Defendant and Eder opened fire. Daniel was shot several times and took a fatal bullet to the chest. Juan Carlos was fatally shot once in the chest and once in the head. Jose was taken to the hospital for his injuries. Jorge was shot several times but managed to escape to another room where he hid in a closet and called 9-1-1.

**{5}**    The jury convicted Defendant of two counts of first-degree, willful and deliberate murder, contrary to NMSA 1978, Section 30-2-1(A)(1) (1994); conspiracy to commit first-degree, willful and deliberate murder, contrary to NMSA 1978, Section 30-28-2 (1979); first-degree kidnapping, contrary to NMSA 1978, Section 30-4-1 (2003); and two counts of attempt to commit first-degree, willful and deliberate murder, contrary to NMSA 1978, Section 30-28-1 (1963) and Section 30-2-1(A)(1). The district court applied a firearm enhancement to Defendant's sentences for the kidnapping and attempted murder convictions, pursuant to NMSA 1978, Section 31-18-16 (1993).

**{6}**    Defendant appeals his convictions pursuant to this Court's jurisdiction under Article VI, Section 2 of the New Mexico Constitution and Rule 12-102(A)(1) NMRA. As the questions of law presented in this appeal are sufficiently answered by New Mexico precedent and substantial evidence disposes of the issues, we exercise our discretion under Rule 12-405(B) NMRA to explain our conclusions in this nonprecedential decision.

## II.    DISCUSSION

**{7}**    Defendant makes six arguments on appeal. He asserts that the district court erred when it (1) admitted reference to his codefendant's nickname, (2) denied his

codefendant's motion to sever the trial, (3) admitted video evidence taken from a city traffic camera absent proper foundation, (4) failed to properly instruct the jury on the doctrine of incidental restraint which would have stripped his kidnapping conviction of support by sufficient evidence, (5) applied a firearm enhancement to Defendant's kidnapping conviction absent sufficient evidence that a firearm was used in the commission of that offense, and (6) denied the use of a particular jury instruction regarding eyewitness testimony. For the reasons stated herein, we reject each of Defendant's arguments and affirm his convictions and sentences.

## A.      Admission of Codefendants' Nicknames

**{8}**      Defendant argues that the district court erred in admitting references to the nicknames of the men involved in the shooting. Over objection at trial, the district court permitted testimony that Eder, Rafael, and Carlos were known as "El Chapo," "El Gordo," and "El Guerro,"[1] respectively. Defendant argued before the district court that use of the nicknames was "emblematic" of organized crime, gang activity, and drug trafficking and therefore was more prejudicial than probative under Rule 11-403 NMRA. In particular, Defendant argued below, and maintains his argument on appeal, that the use of Eder's nickname was unfairly prejudicial because "El Chapo" is also the nickname of a notorious Mexican drug kingpin. The State responds that there was no unfair prejudice to Defendant because "El Chapo" is a "common" and "innocuous" nickname meaning "short" that just happens to also be associated with an infamous criminal.

**{9}**      We review the district court's admission of relevant evidence for an abuse of discretion. *State v. Otto*, 2007-NMSC-012, ¶¶ 9-10, 14, 141 N.M. 443, 157 P.3d 8. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize the ruling as clearly untenable or not justified by reason." *Id.* ¶ 9 (internal quotation marks and citation omitted).

**{10}**      Rule 11-403 grants the district court discretion to "exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Evidence is unfairly prejudicial "if it is best characterized as sensational or shocking, provoking anger, inflaming passions, or arousing overwhelmingly sympathetic reactions, or provoking hostility or revulsion or punitive impulses, or appealing entirely to emotion against reason." *State v. Stanley*, 2001-NMSC-037, ¶ 17, 131 N.M. 368, 37 P.3d 85 (internal quotation marks and citation omitted).

**{11}**      At trial, the district court heard extensively from each defendant and the State regarding the prejudicial effect of the nicknames. Before ruling on the matter, the district court allowed trial counsel to question Carlos, the witness who would testify to his knowledge of the men's nicknames, outside the presence of the jury. During this voir dire, Carlos explained that he had known the defendants by their nicknames since

---

[1]We note that in recording the nickname for Carlos, one of two transcribers of trial testimony used "Guerro" exclusively and the other used "Guero" exclusively. We quote the spelling used in the transcriptions.

childhood. Specifically in reference to Eder, Carlos said that "El Chapo" was "just what his family has called him since he was little." Reasoning that "it is clear that these are childhood nicknames," the district court permitted references to the defendants by their nicknames, but it instructed the parties that they could not "elicit evidence that the nicknames were used in any way to try to hide true identity."

{12}    The defendants' nicknames were mentioned a handful of times at trial. The jury heard Carlos's testimony identifying Rafael as "El Gordo" and Eder as "El Chapo." Mirna testified that she knew Eder as "El Chapo" and that she heard "El Chapo's" voice on the night of the shooting "[w]hen those cars showed up [and] people got out and they yelled at [Daniel] to get out of the car." In addition, Detective Leah Acata testified that early in her investigation, she learned that individuals known as "Chapo's brother," "Chapo," "Gordo," and "Guero" were involved in the shooting. She was then able to match the nicknames to Defendant, Eder, Rafael, and Carlos, and she used their photographs to compile photo arrays for identification purposes. In closing argument, the State mentioned the defendants' nicknames twice: once in recounting Carlos's testimony that the nicknames were "family names" that had followed them all since childhood, and once in recounting Mirna's testimony that she eventually told police that "Guero and Chapo" were involved in the shooting. Rafael's trial counsel explained to the jury during his closing argument that "'Chapo' means short."

{13}    Based on how the nicknames were presented and used at trial, Defendant fails to show how his codefendants' nicknames evoked emotion or inflamed passions such that they caused him unfair prejudice. The State never attempted to draw a comparison between Defendant's brother and the cartel leader known as "El Chapo," nor did the State insinuate that the defendants adopted nicknames to hide their true identities. Rather, the nicknames were used simply to tell the story of the shooting from the perspective of the eyewitnesses and to explain the detective's process during her investigation. Accordingly, we conclude that the district court did not abuse its discretion in admitting this evidence.

## B.    Severance

{14}    Defendant advances two arguments in favor of his assertion that the joint trial should have been severed. One argument for severance which Defendant raises for the first time on appeal is that evidence of Eder's nickname—"El Chapo"—would not have been admissible in Defendant's separate trial. Defendant also argues that the district court erred in denying Rafael's motion to sever because Defendant's and Rafael's defense theories conflicted. We are not persuaded by either argument, and we address each in turn.

### 1.    Cross-admissibility of Eder's nickname

{15}    Defendant argues that his trial should have been severed from Eder's because evidence of Eder's nickname, which Defendant considers "irrelevant and unfairly

prejudicial," would not have been admissible in Defendant's separate trial. Defendant did not preserve this argument below.

**{16}** "In order to preserve an error for appeal, it is essential that the ground or grounds of the objection or motion be made with sufficient specificity to alert the mind of the trial court to the claimed error or errors, and that a ruling thereon then be invoked." *State v. Varela*, 1999-NMSC-045, ¶ 25, 128 N.M. 454, 993 P.2d 1280 (internal quotation marks and citation omitted); *see also* Rule 12-321(A) ("To preserve an issue for review, it must appear that a ruling or decision by the trial court was fairly invoked."). Defendant fails to direct us to any portion of the transcript or record below where he moved the district court to sever the trial on the basis that Eder's nickname would not have been admissible in Defendant's separate trial. For this reason, we conclude that Defendant failed to preserve this argument for our review.

**{17}** We review unpreserved arguments for fundamental error. *See State v. Barber*, 2004-NMSC-019, ¶ 8, 135 N.M. 621, 92 P.3d 633. Defendant makes no attempt in his brief to argue that being tried alongside Eder resulted in fundamental error. Therefore we decline to review this issue. *See State v. Dickert*, 2012-NMCA-004, ¶ 35, 268 P.3d 515 (declining to review for fundamental error absent the party's development of that argument). We turn to Defendant's second claim of error regarding the district court's denial of the motion to sever on the basis of conflicting defenses.

## 2. Conflicting theories of defense

**{18}** Defendant next argues that the district court erred in denying Rafael's motion to sever the trial based on conflicting defenses. Prior to trial, Rafael moved for severance[2] on the grounds that he would be bolstering the credibility of certain witnesses while Defendant and Eder would be attacking the credibility of the same witnesses. Defendant concurred in Rafael's motion. The district court denied the motion, concluding that it was "not clear that [Rafael's] defense is irreconcilable with or mutually antagonistic to the defenses of his co-defendants."

**{19}** A district court's decision to join or sever defendants is guided by Rule 5-203 NMRA. "If it appears that a defendant or the state is prejudiced by a joinder of . . . defendants by the filing of a statement of joinder for trial, the court may . . . grant a severance of defendants, or provide whatever other relief justice requires." Rule 5-203(C). We review a district court's denial of a motion to sever for an abuse of discretion. *See State v. Garcia*, 2011-NMSC-003, ¶ 16, 149 N.M. 185, 246 P.3d 1057; *State v. Gallegos*, 2007-NMSC-007, ¶ 18, 141 N.M. 185, 152 P.3d 828. Even if we conclude that the trial court abused its discretion, we "will not reverse unless the error actually prejudiced the defendant." *Gallegos*, 2007-NMSC-007, ¶ 18. A district court abuses its discretion when its ruling is "clearly untenable and not justified by reason." *State v. Rojo*, 1999-NMSC-001, ¶ 41, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted).

---

[2]Eder also filed an untimely motion to sever on these grounds, which the district court denied. Defendant only claims error in the denial of Rafael's motion to sever.

**{20}** When codefendants' theories of defense are irreconcilable, their joint trial must be severed. In *State v. Segotta*, the Court of Appeals held that severance is required when codefendants present defenses "so antagonistic that a fair trial can be assured only by a severance." 1983-NMCA-054, ¶ 32, 100 N.M. 18, 665 P.2d 280 ("Separate trials are required only when . . . defendants are deprived of the opportunity to present effective defenses."), *rev'd on other grounds*, 1983-NMSC-092, ¶¶ 1,10, 100 N.M. 498, 672 P.2d 1129. "[I]nconsistent defenses may support a motion for severance" when the defendants' accounts are on a "collision course" and are "so contradictory as to raise an appreciable danger that the jury would convict solely on the basis of the inconsistency." *Id.* ¶ 30 (internal quotation marks and citation omitted).

**{21}** On appeal, Defendant identifies Carlos's testimony as the impetus of the conflicting defenses among the codefendants. This is because Carlos testified that he and Rafael were still outside the house while the shooting occurred inside after Defendant and Eder entered the house with Daniel. Defendant argues that this testimony drove Rafael to reinforce Carlos's credibility while Defendant and Eder sought to discredit Carlos. The record does not support Defendant's assertion.

**{22}** Both Rafael and Defendant questioned Carlos's credibility in arguing their defenses to the jury. In his opening and closing arguments, Rafael's counsel encouraged the jury to doubt Carlos's reliability, highlighting self-interest as Carlos's motive for testifying in order to obtain a lighter sentence in a separate case. Rafael's counsel argued in the alternative that *if* the jury believed Carlos, then Rafael could not be guilty of murder, but this argument was secondary to Rafael's main assertion that Carlos was not a credible witness.

**{23}** Defendant did not disagree with Rafael's characterization of Carlos as an unreliable witness. Similar to Rafael's counsel's opening and closing arguments, Defendant's counsel dedicated a portion of his closing argument to questioning Carlos's motives for testifying and poking holes in Carlos's version of events. Thus, Defendant is incorrect when he argues that his defense conflicted with that of Rafael.

**{24}** Because the jury was not presented with conflicting defenses regarding Carlos's testimony, we need not determine whether these circumstances support severance under the standard articulated by the Court of Appeals in *Segotta*. On this record, we cannot conclude that the district court's denial of Rafael's motion to sever was "clearly untenable and not justified by reason," and we reject Defendant's request for reversal. *See Rojo*, 1999-NMSC-001, ¶ 41.

## C.    Admission of Video Footage from the Traffic Camera

**{25}** Defendant argues that video footage showing a vehicle matching the description of Defendant's vehicle was improperly admitted at trial because it lacked sufficient foundation under Rule 11-901 NMRA. The video footage taken from a city traffic camera shows a car matching the description of Defendant's vehicle at an intersection near the scene of the shooting on August 8, 2016, at 11:05 p.m., which was around the same

time witnesses reported the shooting to have occurred. During Detective Acata's testimony, the district court admitted the video footage "under the business records exception" to the rule against hearsay and ruled that the footage was properly authenticated by Detective Acata. *See* Rule 11-803(6) NMRA. Defendant contests this ruling on appeal, arguing that Detective Acata's foundational testimony "was impossible" and therefore insufficient under Rule 11-901.

**{26}**   We review the district court's ruling to admit the video footage for an abuse of discretion. *See State v. Smith*, 2016-NMSC-007, ¶ 46, 367 P.3d 420. To authenticate an item of evidence at trial, the proponent of the item "must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Rule 11-901(A). This requirement is met if the proponent provides testimony from a "witness with knowledge . . . that an item is what it is claimed to be." Rule 11-901(B)(1). In *State v. Imperial*, the Court of Appeals declined to raise the bar for authentication and admission of video footage that contained "computer-generated graphics indicating the date and time" that "could theoretically be manipulated." 2017-NMCA-040, ¶¶ 33-34, 392 P.3d 658. The Court of Appeals held that such video footage was properly authenticated because the "record evidence" of the footage met the requirements of Rule 11-901. *Id.* ¶ 34.

**{27}**   At trial, prior to ruling on the admissibility of the video footage, the district court permitted the parties to conduct a voir dire examination of Detective Acata. During voir dire, Detective Acata testified that she obtained the traffic camera footage from the Realtime Crime Center (RTCC) in Albuquerque at 7 a.m. on August 9, 2016, the day after the shooting. She stated that at that time—at her request and in her presence—an RTCC staffer copied footage from a traffic camera that continuously monitors the particular intersection of interest. That video camera footage was marked with timestamps of the recording date and the local time. Detective Acata also explained that she was familiar with the intersection in the video because it "was part of [her] beat," so she was able to "independently verify" that the video showed what it purported to show. Finally, Detective Acata stated that she had no evidence that the video had been manipulated in any way.

**{28}**   On cross examination, Defendant and his codefendants attempted to discredit Detective Acata's testimony with evidence that the disc containing the video footage was created at 5:20 a.m. on the day after the shooting. Defendant presented Detective Acata with a copy of the properties for State's Exhibit 271, the disc containing the copied video footage. Those properties indicated that the disc was created at 5:20 a.m. on August 9, 2016, nearly two hours before Detective Acata said she had arrived at RTCC. When asked whether she agreed that the video was created at 5:20 a.m., Detective Acata replied,

> [T]hat would have been the time on the computer that it was created on. So I can't verify what time was on the computer that it was created on, but I know that I was there at 7 a.m. I documented the time that I was there and the time that I requested the video. . . . I documented that I actually

asked for the video and the time that the video was copied, and it was not at 5:20 a.m., because I was still on the scene [at that time].

**{29}** Based on this testimony, the district court's ruling admitting the video footage was not "clearly untenable" or unreasonable. *See Otto*, 2007-NMSC-012, ¶ 9 (internal quotation marks and citation omitted). Detective Acata was able to provide the necessary foundation to properly authenticate the video footage under Rule 11-901. She explained that the video was copied at her direction and in her presence, that it was not manipulated in any way, and that the footage shows an intersection with which she, independently, is familiar. This is sufficient foundational testimony to meet the requirements of Rule 11-901 despite Defendant's attempt to discredit Detective Acata's testimony with the creation date of the disc. We conclude that the district court's ruling on this issue was not an abuse of discretion.

## D.    Kidnapping Conviction

**{30}** Defendant asserts that his kidnapping conviction should be reversed for two reasons. First, he argues that the kidnapping conviction was not supported by sufficient evidence because the kidnapping was merely incidental to the homicide and conspiracy offenses charged. Second, Defendant claims that fundamental error resulted from the district court's failure to give jury instructions that more fully explained the doctrine of incidental restraint. We address each of Defendant's arguments in turn.

### 1.    The kidnapping conviction was supported by sufficient evidence

**{31}** When reviewing the sufficiency of the evidence, we assess "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Astorga*, 2015-NMSC-007, ¶ 57, 343 P.3d 1245 (internal quotation marks and citation omitted). In doing so, "we must view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 (internal quotation marks and citation omitted). The jury instructions given at trial become the law of the case when reviewing the sufficiency of the evidence. *Id.*

**{32}** To convict Defendant of the kidnapping charge, the jury was instructed, in relevant part, that it must find the following beyond a reasonable doubt:

1. [D]efendant took [Daniel] by force, intimidation, or deception; by ordering him out of his car and walking him into the [house];

2. [D]efendant's act was unlawful;

3. [D]efendant intended to inflict death or physical injury on [Daniel];

4. The taking of [Daniel] was not slight, inconsequential, or merely incidental to the commission of [any of the homicide or conspiracy crimes charged against Defendant; and]

5. [D]efendant inflicted physical injury upon [Daniel] during the course of the kidnapping[.]

These instructions followed the pertinent Uniform Jury Instruction for kidnapping, UJI 14-403 NMRA, including the language to be used when "the evidence raises a genuine issue of incidental conduct," UJI 14-403 Use Note 8.

**{33}** The following evidence supports the jury's conviction on the kidnapping charge under these instructions. Carlos testified that Defendant parked his vehicle in front of the driveway of the house in order to prevent Daniel's car from continuing to back out. After parking, Defendant and his brother Eder, while carrying guns, walked up to the driver's side of Daniel's car, opened the door, told Daniel to get out, and pulled him from the vehicle. According to Carlos, Defendant and Eder then grabbed Daniel by the shirt and took him into the house. Jorge testified that as soon as he saw Daniel enter the house, he noticed that one of the men was pointing a gun at Daniel's back as if he had made Daniel walk into the house at gunpoint.

**{34}** Viewing this testimony in the light most favorable to the jury's verdict, we conclude that sufficient evidence supports the kidnapping conviction. Consideration of the doctrine of incidental restraint does not alter our conclusion. Under the doctrine of incidental restraint, a kidnapping conviction will not stand if the restraint on the victim was "merely incidental" to another crime. *State v. Trujillo*, 2012-NMCA-112, ¶ 37, 289 P.3d 238 (internal quotation marks and citation omitted), *cert. quashed* 2015-NMCERT-003, 346 P.3d 1163. To determine whether restraint is incidental to another crime, we consider "whether the restraint or movement increases the culpability of the defendant over and above his culpability for the other crime." *Id.* ¶ 38.

**{35}** In this case, we conclude that Defendant's restraint of Daniel in the minutes before Daniel's death increased Defendant's culpability for his criminal conduct. Defendant and his brother grabbed Daniel out of the car and walked him at gunpoint into the house. Only after they had forced Daniel into the house did they open fire. That evidence does not demonstrate that the restraint on Daniel was merely incidental to his murder. Therefore the conviction stands because sufficient evidence supports the kidnapping verdict in this case.

## 2. The jury instruction was not fundamental error

**{36}** Defendant asserts that the jury should have been given a more complete instruction defining the legal term of art, "incidental restraint." He claims fundamental error in the fact that the jury was not given multiple factors to consider in its determination of whether "the taking of [Daniel] was not slight, inconsequential, or merely incidental to the commission of" Defendant's other charged offenses.

**{37}** "Fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *State v. Samora*, 2016-NMSC-031, ¶ 27, 387 P.3d 230 (internal quotation marks and citation omitted). Under this standard, we ask "whether a reasonable juror would have been confused or misdirected not only from instructions that are facially contradictory or ambiguous, but from instructions which, through omission or misstatement, fail to provide the juror with an accurate rendition of the relevant law." *Id.* (internal quotation marks and citation omitted).

**{38}** Defendant claims that the omission of a list of factors used to assess incidental restraint, recorded in the committee commentary to UJI 14-403, meant that the jury did not receive "an accurate rendition" of the legal doctrine of incidental restraint. *See Samora*, 2016-NMSC-031, ¶ 27 (internal quotation marks and citation omitted). We disagree. The list of factors was provided in committee commentary to aid in consideration of whether there was "a genuine issue of incidental conduct" such that the jury should receive additional instruction to explain the concept of incidental restraint. *See* UJI 14-403 Use Note 8. The jury in this case received that additional instruction, which clarified that the jury could only convict for kidnapping if it found that the restraint on Daniel "was not slight, inconsequential or merely incidental" to the charged offenses of homicide or conspiracy to commit first-degree murder. The legal term of art "incidental restraint" was not included in the jury instruction. Rather, the concept was explained using the appropriate language of the UJI.

**{39}** Defendant fails to demonstrate that a reasonable juror would have been confused or misdirected by the language of UJI 14-403 and thus fails to overcome our presumption that UJI 14-403 provided a full and correct statement of the relevant law. *See State v. Wilson*, 1994-NMSC-009, ¶ 5, 116 N.M. 793, 867 P.2d 1175 ("[T]his Court's adoption of uniform jury instructions proposed by standing committees of the Court establishes a presumption that the instructions are correct statements of law."). Failure to provide additional language above and beyond the language already included in the UJI to explain incidental conduct does not call into doubt Defendant's kidnapping conviction and was not fundamental error.

## E.    Firearm Enhancement

**{40}** Defendant complains that his sentence for kidnapping should not have been enhanced based on his use of a firearm. He argues that the State failed to put forth sufficient evidence that a firearm was "used" in the commission of the kidnapping. We disagree.

**{41}** Sufficient evidence is "evidence which is acceptable to a reasonable mind as adequate support for a conclusion." *State v. Flores*, 2010-NMSC-002, ¶ 2, 147 N.M. 542, 226 P.3d 641 (internal quotation marks and citation omitted). At trial, the jury heard evidence from Carlos that he witnessed Defendant and Eder ordering Daniel out of his car and into the house with their guns visible (either on their bodies or in their hands). Mirna testified that she saw the men approaching Daniel's vehicle with two guns in

hand. From Jorge, the jury heard that one of the defendants was pointing a gun at Daniel's back as they entered the house. Ultimately, the jury found that "a firearm was used in the commission of [kidnapping]." Viewing the evidence in the light most favorable to the jury's determination, we conclude that a reasonable mind could find that Defendant used a firearm in the commission of the kidnapping. *See id.* Therefore, sufficient evidence supports the firearm enhancement of Defendant's kidnapping conviction, and we affirm his sentence.

## F.    Eyewitness Identification Instruction

**{42}**    Defendant argues that the district court erred in refusing to give a jury instruction explaining how to evaluate the reliability of eyewitness identification testimony. Defendant fails to identify any eyewitness testimony that would have supported the use of Defendant's proposed jury instruction. Instead, Defendant merely asserts without reference that "there were eyewitness identification issues" at trial. For this reason, Defendant's brief on this issue does not conform with the requirements of Rule 12-318(A)(3)-(4) NMRA (requiring the brief in chief to summarize the relevant facts and cite the proceedings below). We will not review inadequately briefed issues where we must guess at the parties' arguments and perform their work for them. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53. Therefore, we decline to review Defendant's argument regarding the district court's denial of his proposed jury instructions related to eyewitness identification.

## III.    CONCLUSION

**{43}**    For the foregoing reasons, we affirm Defendant's convictions and sentences. Defendant received a fair trial, and sufficient evidence supported his convictions and sentences.

**{44}    IT IS SO ORDERED.**

**BARBARA J. VIGIL, Justice**

**WE CONCUR:**

**JUDITH K. NAKAMURA, Chief Justice**

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**DAVID K. THOMSON, Justice**